IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

KIMBERLY L. BRYANT,

     Petitioner,

  v.                                  **Case No. 2:16-cv-687**

WARDEN, OHIO REFORMATORY FOR      **JUDGE ALGENON L. MARBLEY**
    WOMEN,                           **Magistrate Judge Kemp**

     Respondent.

## REPORT AND RECOMMENDATION

Petitioner, Kimberly L. Bryant, an inmate at the Ohio Reformatory for Women ("ORW"), filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. This matter is before the Court on the petition (Doc. 3) and the Respondent's return of writ (Doc. 11). Petitioner has not filed a traverse. For the foregoing reasons, it will be recommended that the petition be **DENIED** and this case be **DISMISSED**.

## I. Factual Background

The facts of the case are summarized by the Ross County, Ohio, Court of Appeals:

{¶ 4} This case evolved from a controlled purchase of heroin at the home of Shonda Cremeans and subsequent search warrant for Cremeans's home. Prior to executing the search warrant Chillicothe Police Detectives Twyla Goble and Charles Campbell observed Bryant in her blue Hyundai Elantra automobile pull up to the front of the house. Shortly thereafter, Cremeans exited the house, entered the front passenger side of the vehicle, and Bryant drove the vehicle away. While following the vehicle the detectives observed Bryant make a left-hand turn without using her turn signal and fail to stop at a stop sign. The detectives initiated a stop of the car because of the traffic violations.

{¶ 5} The detectives approached the vehicle and asked Bryant for her license. As they approached the car, the detectives noticed that Cremeans was reaching around the floor in front of her where her white purse and address book were located. Bryant retrieved her license from a wallet in her black purse, which was located in the center console. After Bryant gave Detective Campbell her license, the detectives requested a police dog at the scene. The dog conducted a sniff of Bryant's vehicle and alerted to the presence of controlled substances in the car.

{¶ 6} The detectives removed both Cremeans and Bryant from the vehicle and, with their consent, searched their persons. They found no controlled substances on Cremeans, but Detective Goble found two baggies inside a larger bag in Bryant's left coat pocket. The first baggie contained over seven grams of heroin and the second baggie contained approximately a half gram of cocaine. Detective Goble handcuffed Bryant, gave her *Miranda* warnings, and placed her in a police cruiser.

{¶ 7} Detective Goble searched Cremeans's white purse, which was located at her feet in the front passenger seat of the car, and found heroin and $296. Detective Campbell searched Bryant's black purse, which had been in the center console of the car, and he found a large Ziploc bag containing digital scales and over four grams of heroin. He also found over $1,000 in cash in Bryant's purse.

{¶ 8} The state charged Bryant with one count of possession of heroin in violation of R.C. 2925.11, a second-degree felony, and one count of possession of cocaine in violation of R.C. 2925.11, a fifth-degree felony

{¶ 9} At trial Bryant admitted that the black purse and the cash inside it was hers, but denied knowledge of the drugs or scales found inside her purse. Instead, she contended that Cremeans put the drugs in her purse during the traffic stop. Bryant also denied ownership of the coat and claimed that Cremeans left the coat in her car four days before the incident. Bryant further claimed that she put on Cremeans's coat after she got in her car because she forgot her jacket at home and had no idea there were drugs in the coat pocket. No evidence corroborated Bryant's claims.

{¶ 10} The jury returned guilty verdicts on both counts and the trial court sentenced her accordingly.

(Exhibit 6, Decision and Judgment Entry, ¶¶4-10; *State v. Bryant,* 2014 WL 7174598 (Ross Cty. App. Dec. 10, 2014) at ¶¶4-10). The factual narratives set out by the state court are presumed to be correct. 28 U.S.C. §2254(e)(1).

## II. Procedural History

### A. Trial Court Proceedings

Petitioner was indicted by the Ross County Grand Jury on May 3, 2013, charging her with one count of possession of heroin (O.R.C. §2925.11) and one count of possession of cocaine (O.R.C. §2925.11), second and fourth degree felonies respectively. (Doc. 11, Ex. 1). Petitioner pleaded not guilty to the charges.

Following a jury trial, Petitioner was found guilty on both counts (Doc. 11, Ex. 2) and was subsequently sentenced to an aggregate term of five years' imprisonment. (Doc. 11, Ex. 3).

### B. Direct Appeal

Petitioner, through counsel, timely appealed her conviction, raising the following assignments of error:

1. The State of Ohio's use of appellant's silence as substantive evidence of guilt in its case in chief violated her Fifth Amendment privilege against self-incrimination and due process guarantees of the Fourteenth Amendment which resulted in unfair prejudice.

2. Appellant's conviction was against the manifest weight of the evidence.

(Doc. 11, Ex. 4). The Ross County Court of Appeals affirmed the trial court's judgment. (Doc. 11, Ex. 6); *State v. Bryant,* 2014 WL 7174598 (Ross Cty. App. Dec. 10, 2014).

### C. Appeal to the Ohio Supreme Court

On January 29, 2015, Petitioner, *pro se*, filed a notice of appeal to the Ohio Supreme Court (Doc. 11, Ex. 7) together with a motion for delayed appeal (Doc. 11, Ex. 8). Petitioner's motion for delayed appeal was accompanied by an affidavit attesting to a number of reasons for her failure to timely file her appeal, including inability to pay legal counsel to represent her, failure of the Ohio Public Defender to provide counsel, and the fact that she did not receive her transcripts until on or about January 12, 2014. Petitioner also alluded to the fact that the ORW library was closed for most of the month of January due to a broken heating system. Petitioner's motion for a delayed appeal was denied on March 11, 2015. (Doc. 11, Ex. 9); *State v. Bryant*, 141 Ohio St.3d 1487 (Mar. 11, 2015).

### D. Application for Re-Opening of Appeal Pursuant to App.R. 26(B)

Petitioner filed a timely application to re-open her appeal pursuant to App.R. 26(B) on March 4, 2015. (Doc. 11, Ex. 10). She claimed ineffective assistance of appellate counsel, raising the following assignments of error:

> 1. Appellant was deprived of the effective assistance of appellate counsel and her rights violated under the Sixth Amendment to the United States Constitution. Appellate counsel did not raise the issue of ineffective assistance of trial counsel. Trial Counsel failed to:
>
>    (a) adequately investigate and prepare for trial and discuss trial strategy with defendant. Trial Counsel did NOT request DNA, Serology, and Latent Fingerprint independent analysis of the drugs, baggies containing the drugs, scales, and etc. found in Defendant Kim Bryant's purse, coat pocket even though Defendant paid money to have those tests performed.

(b)     The State did not overcome its burden for the warrantless search of Defendant's vehicle.

(c)     object on the record when the prosecutor presented evidence and commented on the defendant's silence when interrogated while in police custody limiting appellate review to plain error only.

(d)     pursuing a professionally unreasonable trial strategy without discussing the trial strategy with Defendant and, inter alia, including stipulating to the reliability of the narcotics dog, stipulating that Defendant would testify and make certain admissions; and having the Defendant testify without her consent and being told by trial counsel that she "had to" testify shifting the burden of proof to Defendant's [sic] .

(e)     failing to bring forth the Chillicothe Police Procedures for traffic stops;

(f)     failing to question Defendant to dispute the alleged traffic violations since the Chillicothe Police failed to use the video/audio equipment in the police vehicle.

2.     Appellant was deprived of the effective assistance of appellate counsel and her rights violated under the Sixth Amendment to the Constitution. Appellate counsel did not raise the issue that the trial court erred in denying the motion to suppress and not granting a mistrial in the trial court's finding that Detectives Campbell and Goble had reasonable articulable suspicion to stop the motor vehicle in which Defendant was driving was not supported by sufficient evidence and was otherwise clearly erroneous; the stop of the vehicle and all evidence flowing therefrom were obtained in violation of the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Section 14 of the Ohio Constitution.

On April 20, 2015, the Court of Appeals denied her motion because she failed to establish a genuine issue about whether she had a colorable claim of ineffective assistance of appellate counsel. (Doc. 11, Ex. 12).

### E.  Appeal of Denial of 26(B) Motion

Petitioner, acting *pro se*, appealed the denial of her 26(B) motion to the Ohio Supreme Court (Doc. 11, Ex. 13-14), asserting the following propositions of law:

I.      Whether the Court of Appeals commits reversible error when a timely filed App. R. 26(B) Application for Re-Opening is denied when the affidavit included "some" but not all of the contentions raised in the assignments of error alleging ineffective assistance of appellate counsel, resulting in Ms. Bryant's and defendants like Bryant to never have an opportunity to fully present her case on the merits to *any* court. *See*, *State v, Davis*, 119 Ohio St.3d 422 (2008).

II.     Whether a defendant's right not to incriminate himself both pre and post Miranda warnings may be violated in prosecutorial misconduct when the State uses the defendant's silence as an inference of guilt in his opening statement, and on cross examination of the government witnesses.

III.    Whether a U.S. Citizen and resident of Ohio must be free from unlawful search and seizure in their person and property under the Fourth Amendment to the United States when they are unlawfully detained and arrested for an alleged traffic violation by police officers.

IV.     Whether the detention of a defendant, stopped for an alleged traffic violation, exceeds its proper investigative scope, whether the items seized during any resulting search must be suppressed under the "fruits of the poisonous tree" doctrine.

V.      Whether the trial court and appellate court committed reversible error by determining a mistrial was not the proper remedy when the trial court admitted it was prejudicial for the prosecutor to use the defendant's silence at any point during the closing, opening, direct examination or cross examination for impeachment purposes.

VI. Whether the defendant's right to effective assistance of counsel were (sic) violated when defense counsel failed to object to the prosecutorial misconduct when on direct examination of the detective and in opening statement the prosecutor commented on the defendant's silence as an inference of guilt foreclosing all but plain error, and failing to raise the issue of the denial of the motion to suppress on appeal as well as the unlawful search and seizure under "Terry" and the records of the sidebars from the trial not being made for purposes of appeal, and inter alia. (sic)

On June 8, 2015, the Ohio Supreme Court *sua sponte* struck a portion of Petitioner's Memorandum in Support of Jurisdiction for exceeding the page limit imposed by S.Ct.Prac.R. 7.02(B)(1). (Doc. 11, Ex. 15). The Ohio Supreme Court declined to accept jurisdiction on August 26, 2015. (Doc. 11, Ex. 16); *State v. Bryant*, 143 Ohio St.3d 1447 (Aug. 26, 2015).

## F. Motion for Reconsideration

Petitioner filed a motion for reconsideration to the Ohio Supreme Court on September 8, 2015, based on the following reasons:

1. A denial of this Court to accept jurisdiction of this appeal runs counter to the purpose and principle of Appellate Rule 26(B). *State v. Davis,* 119 Ohio St. 422 (1986).

2. The Court of Appeals (sic) denial of Ms. Bryant's timely filed App.R. 26(B) application would never allow Ms. Bryant or other similarly situated defendant's an opportunity to fully present her case to *any* court for the violation of her Sixth Amendment right for the effective assistance of Counsel under the United States Constitution.

On October 28, 2015, the Supreme Court of Ohio denied the motion for reconsideration. (Doc. 11, Ex. 18); *State v. Bryant*, 143 Ohio St.3d 1503 (Oct. 28, 2015).

## G. Federal Habeas Corpus

Petitioner timely executed her petition for a writ of habeas corpus on July 9, 2016.

In the petition (Doc. 3) she raises the following grounds for relief:

> **GROUND ONE**  Petitioner was deprived of the effective assistance of trial counsel and appellate counsel and her rights violated under the Sixth Amendment to the Constitution. Trial counsel failed to adequately investigate and prepare for trial and discuss trial strategy with Defendant. Trial Counsel did not request DNA, Serology, and independent Latent Fingerprint Analysis of the drugs, baggies containing the drugs, scales, and other evidence found in the Defendant's purse, coat pocket, even though Defendant paid trial counsel additional money to have those tests performed; argue that the State did not overcome its burden for the warrantless search of the Defendant's vehicle; object on the record when the State Prosecutor presented evidence and commented on the Defendant's silence when interrogated while in police custody limiting appellate review to plain error only; pursued a professionally unreasonable trial strategy without discussing the trial strategy with Defendant and, inter alia, including stipulating to the reliability of the narcotics dog, stipulating that Defendant would testify and make certain admissions; and having the Defendant testify without her consent and being told by trial counsel that she "had to" testify shifting the burden of proof to Defendant; failing to bring forth the Chillicothe Police Procedures for traffic stops; and failing to question Defendant to dispute the alleged traffic violations since the Chillicothe Police failed to use the video/audio equipment in the police vehicle. Appellate Counsel did not raise the issue of ineffective assistance of trial counsel; did not raise the issue that the Trial Court erred in denying the Motion to Suppress; and appellate counsel did not challenge that trial court's error of law in not granting a mistrial based on prosecutorial misconduct; neither did appellate counsel challenge the stop, search, and seizure which violated the Petitioner's Fourth Amendment rights.

> **GROUND TWO**: Petitioner's right not to incriminate herself both pre and post Miranda warnings were violated under the Fifth Amendment to the United States Constitution when in prosecutorial misconduct the State uses the Petitioner's silence as an inference of guilt during the trial and on examination of the government's witnesses.

**GROUND THREE**: Petitioner's right to be free from unlawful search and seizure under the Fourth Amendment was violated when the detective used a traffic violation as the pretext for the stop when they failed to execute the search warrant of the passenger's home, and then unlawfully detained the Petitioner abandoning the purpose of the stop immediately after asking Petitioner for her driver's license.

**GROUND FOUR**: Petitioner's Fourth Amendment rights were violated when she was unlawfully detained beyond the time necessary to effectuate the purpose of a stop for and (sic) alleged traffic violation; and the items seized during any resulting search must be suppressed under the "fruits of the poisonous tree" doctrine.

**GROUND FIVE**: Petitioner's Fifth Amendment right was violated when the Trial Court and Appellate Court erred by not declaring a mistrial when the Prosecutor uses the Defendant's silence during the trial as in (sic) inference of her guilt and/or impeachment purposes.

**GROUND SIX**: Petitioner's right to the effective assistance of counsel was violated when defense trial counsel failed to object to the Prosecutorial misconduct when on examination of the detective the Prosecutor commented on the Defendant's silence as an inference of guilt foreclosing all but plain error, and appellate counsel failing to raise the issue of the denial of the Motion to Suppress on appeal as well as the unlawful search and seizure under "Terry"; and the records of the sidebars from the Trial Court not being made for purposes of appeal, inter alia.

Respondent contends that most of these claims were procedurally defaulted by Petitioner's failure properly to preserve them for review during the state court proceedings, and also asserts that some claims (like any claims based directly on the Fourth Amendment) are not properly raised in a federal habeas corpus petition. However, Respondent concedes that Petitioner properly raised, and received a merits decision on, the ineffective assistance of appellate counsel arguments which she advanced in her Rule 26(B) motion to reopen. The Court will first address the issue of procedural default.

## II. Procedural Default

Congress has provided that state prisoners who are in custody in violation of the Constitution or laws or treaties of the United States may apply to the federal courts for a writ of habeas corpus. 28 U.S.C. §2254(a). In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the state courts for consideration. 28 U.S.C. §2254(b), (c). If she fails to do so, but still has an avenue open to her by which he may present her claims, then her petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless*, 459 U.S. 4, 6, 103 (1982) (per curiam) (*citing Picard v. Connor*, 404 U.S. 270, 275–78 (1971)). Where a petitioner has failed to exhaust her claims but would find those claims barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas...." *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991).

The term "procedural default" has come to describe the situation where a person convicted of a crime in a state court fails (for whatever reason) to present a particular claim to the highest court of the State so that the State has a fair chance to correct any errors made in the course of the trial or the appeal before a federal court intervenes in the state criminal process. The requirement that a claim be fairly presented to the state courts "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review." *Hicks v. Straub*, 377 F.3d 538, 552–53 (6th Cir. 2004)

(*quoting Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)). One of the aspects of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal law claims being asserted. That means that if the claims are not presented to the state courts in the way in which state law requires, and the state courts therefore do not decide the claims on their merits, neither may a federal court do so. In the words used by the Supreme Court in *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case-that is, they are "procedurally defaulted."

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is waived by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id*. Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id.* Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim. *Id.* Finally, if the Court has determined that a state procedural rule was not complied with, and that the rule was an adequate and independent state ground, then the petitioner must demonstrate that there was cause for him not to follow the procedural rule, and that he was

actually prejudiced by the alleged constitutional error. *Id*. This "cause and prejudice" analysis applies to failures to raise or preserve issues for review at the appellate level. *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985).

Turning to the fourth part of the *Maupin* analysis, in order to establish cause, petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Constitutionally ineffective counsel may constitute cause to excuse a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). In order to constitute cause, an ineffective assistance of counsel claim generally must " 'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.' " *Edwards*, 529 U.S. at 452 (*quoting Murray, supra*, 477 U.S. at 479. That is because, before counsel's ineffectiveness will constitute cause, "that ineffectiveness must itself amount to a violation of the Sixth Amendment, and therefore must be both exhausted and not procedurally defaulted." *Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir. 2005). Or, if procedurally defaulted, petitioner must be able to "satisfy the 'cause and prejudice' standard with respect to the ineffective-assistance claim itself." *Edwards v. Carpenter*, 529 U.S. 446, 450–51 (2000). The Supreme Court explained the importance of This requirement:

> We recognized the inseparability of the exhaustion rule and the procedural-default doctrine in *Coleman*: "In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court. The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases." 501 U.S., at 732, 111 S.Ct. 2546, 115

L.Ed.2d 640. We again considered the interplay between exhaustion and procedural default last Term in *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999), concluding that the latter doctrine was necessary to " 'protect the integrity' of the federal exhaustion rule." *Id.*, at 848, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (*quoting id.*, at 853, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting)). The purposes of the exhaustion requirement, we said, would be utterly defeated if the prisoner were able to obtain federal habeas review simply by " 'letting the time run' " so that state remedies were no longer available. *Id.*, at 848, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1. Those purposes would be no less frustrated were we to allow federal review to a prisoner who had presented her claim to the state court, but in such a manner that the state court could not, consistent with its own procedural rules, have entertained it. In such circumstances, though the prisoner would have "concededly exhausted her state remedies," it could hardly be said that, as comity and federalism require, the State had been given a "fair 'opportunity to pass upon [her claims].' " *Id.*, at 854, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting) (emphasis added) (*quoting Darr v. Burford*, 339 U.S. 200, 204, 70 S.Ct. 587, 94 L.Ed. 761 (1950)).

*Edwards*, 529 U.S. at 452–53.

If, after considering all four factors of the *Maupin* test, the court concludes that a procedural default occurred, it must not consider the procedurally defaulted claim on the merits unless "review is needed to prevent a fundamental miscarriage of justice, such as when the petitioner submits new evidence showing that a constitutional violation has probably resulted in a conviction of one who is actually innocent." *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013) (*citing Murray v. Carrier*, 477 U.S. 478, 495–96 (1986)).

### A. Ground Two and Five: Comment on Petitioner' Silence

In her second ground for relief, Petitioner asserts that her constitutional rights were violated when the prosecutor improperly elicited testimony that she had invoked her *Miranda* rights when questioned, and then commented on that failure. In ground five,

Petitioner argues that the trial court erred by not declaring a mistrial after the jury heard the testimony about her invocation of *Miranda*. Her first assignment of error on direct appeal addressed these issues. The Fourth District Court of Appeals rejected the claim, noting that although the arresting officer was allowed to testify about Petitioner's silence and invocation of her *Miranda* rights, Petitioner subsequently agreed to the admission of a videotape of the entire exchange between her and the detective questioning her, and also noting that there was overwhelming evidence of her guilt, so that any error was harmless beyond a reasonable doubt. *State v. Bryant*, 2014 WL 7174598, at *3-6.

Petitioner failed to timely appeal this decision to the Ohio Supreme Court, and that court denied her motion for a delayed appeal. Generally, failure to timely appeal to a state court constitutes an independent basis on which to conclude that Petitioner's claims are defaulted. *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004). However, this is not always the case depending on the circumstances. It is necessary to apply the *Maupin* factors to the operation of the specific state procedure invoked by the Petitioner, namely the procedure governing the timing of appeals to the Ohio Supreme Court. *Smith v. Ohio Dept. Of Rehabilitation and Corrections*, 463 F.3d 426, 431-32 (6th Cir. 2006).

The petitioner in *Smith*, like Petitioner here, failed to comply with the state procedural rule requiring him to file his appeal to the Ohio Supreme Court within a prescribed time frame. As a result, the Ohio Supreme Court denied his motion for delayed appeal. As in Petitioner's case, the Ohio Supreme Court did not give any reasons for the denial of the motion for delayed appeal, but the *Smith* court held that given the type of

motion and circumstances, it was apparent that the grounds were the state procedural bar and not federal law. *Id., n. 3, citing Ylst v. Nunnemaker*, 501 U.S. 797, 802-03 (1991). It also pointed out that in a prior case, *Bonilla v. Hurley, supra*, the Court of Appeals had held that the failure timely to appeal to the Ohio Supreme Court is a procedural default because "denial of review on the basis of Rule II §2(A)(4)(a) is an adequate procedural ground to foreclose federal habeas review." *Smith, supra*, at 432. Accordingly, the *Smith* court found that the petitioner had procedurally defaulted the claims which he had raised on direct appeal had been procedurally defaulted. *Id.* The same is true here.

In her motion for delayed appeal, Petitioner asserted, as cause for the delay, her inability to retain counsel for the appeal, the fact that she did not receive her trial transcripts until January 12, 2015, and the closing of the ORW law library for "most of the month of January." *See Return*, Doc. 11, Ex. 8. However, there is no right to appointed counsel in discretionary appeals like the one involved here, so that cannot constitute cause to excuse the default. Further, she had forty-five days, or until January 22, 2015, to file her appeal. She had the transcripts at least ten days before the deadline, and there is no indication in this case that she could not have filed a notice of appeal without them. Finally, Petitioner asserted no valid reason that she could not have conducted any necessary research on her appeal (and, given that her claims were limited to those raised, briefed, and decided in her direct appeal, it is not clear how much additional research was needed) on the days when the ORW library was open between December 10, 2014 and

January 22, 2015.  None of these factors are sufficient to excuse her failure timely to appeal.

As a result, grounds two and five have been procedurally defaulted.

### B.  Grounds One and Six: Ineffective Assistance of Trial Counsel

The only other procedural default argument raised by Respondent relates to

Petitioner's claims, in both grounds one and six, that she was denied the effective assistance

of trial counsel.  (She also raised ineffective assistance of appellate counsel claims in those

grounds, and they are not the subject of a claim of procedural default).  Both grounds one

and six highlight trial counsel's failure to object to the testimony about her invocation of

*Miranda* rights, but they include other instances of alleged ineffectiveness as well, including

the failure to prepare properly for trial, to request various testing of the evidence, properly

to argue the motion to suppress, to stipulate to the qualifications of the narcotics dog, and

to advise her improperly that she had to testify at trial.  Some of these claims are apparent

from the face of the record, while others are not.  Because Petitioner was represented on

direct appeal by different counsel, she had an obligation to raise any ineffective assistance

of trial counsel claims appearing on the face of the record on direct appeal.  The remaining

claims had to be raised, if at all, by way of a post-conviction petition filed under O.R.C.

§2953.21.  *See State v. Perry*, 10 Ohio St. 2d 175 (1967); *see also State v. Cole*, 2 Ohio St.3d 112

(1982).  Petitioner did not include any such claims on direct appeal, nor did she file a post-

conviction petition, and the time to do so has long since passed.  As a result, Respondent

asserts that she defaulted all of her ineffective assistance of trial counsel claims.

Petitioner did file a timely motion to reopen her appeal in which she argued that appellate counsel was ineffective in various ways, including failing to raise certain instances of ineffective assistance of trial counsel. If that argument were accepted, it would excuse any procedural default as to those claims. Consequently, the Court will defer any ruling on that issue until it addresses the merits of the ineffective assistance of appellate counsel claim.

As to the claims which depend on evidence outside the record, appellate counsel may have had some obligation to advise her about the procedure for filing a post-conviction petition, and the State of Ohio may have had an obligation to appoint counsel for her in such a proceeding. *See, e.g., Martinez v. Ryan*, -- U.S. --, 132 S.Ct. 1309, 1315-17 (2012). Petitioner did not raise any claim relating to her right to file a post-conviction proceeding, or the performance of her appellate counsel in connection with such a proceeding, in her Rule 26(B) motion, however. She may therefore have procedurally defaulted any such claim. *See, e.g., Foster v. Brunsman,* 2016 WL 2963425, *2 (S.D. Ohio May 20, 2016). However, the Court will still examine such claims on their merits to the extent that such an inquiry addresses the issue, relevant to procedural default, of whether Petitioner was prejudiced by trial counsel's allegedly deficient performance.

### III. Grounds not Cognizable - Grounds Three and Four

In her third ground for relief, Petitioner argues that the traffic stop which led to her arrest was merely pretextual (and, in fact, that she did not actually commit the traffic violations which formed the basis for the stop) and that her detention while the narcotics

dog was summoned was unlawful.  Her fourth ground states that because of the unlawful length of her detention, and evidence seized during the stop was "fruit of the poisonous tree" any should have been suppressed.  She moved to suppress the evidence seized during the traffic stop  and was given a hearing before the trial court.  *See Return*, Ex. 10 (which is a partial transcript of the hearing).   Respondent argues that none of the issues raised in grounds three or four can form the basis for federal habeas corpus relief.  Respondent is correct.

"Federal habeas corpus relief is unavailable to state prisoners who allege they were convicted on illegally seized evidence, as long as they were given a full and fair opportunity to litigate that question in the state courts." *Barksdale v. London Correctional Inst.*, 832 F.Supp.2d 836, 842 (S.D. Ohio 2011), *citing Stone v. Powell*, 428 U.S. 465, 486 (1976). Petitioner was able to present her Fourth Amendment claim to the state courts and was given a suppression hearing.  But even had she not filed a motion to suppress, Ohio law allowed her to do so and to raise all of her Fourth Amendment Claims.   It is the opportunity to do so which forecloses federal habeas relief.  As the Court of Appeals recently observed in *Good v. Berghuis*, 729 F.3d 636, 639 (6th Cir. 2013),

> the *Powell* "opportunity for full and fair consideration" means an available avenue for the prisoner to present his claim to the state courts, not an inquiry into the adequacy of the procedure actually used to resolve that particular claim.... [T]hat is what *Powell* said: It focused on the opportunity for fair consideration presented by the state courts, not the procedure used in a given case to address the specific argument of a given defendant. In the absence of a sham proceeding, there is no need to ask whether the state court conducted an evidentiary hearing or to inquire otherwise into the rigor of the state judiciary's procedures for resolving the claim.

Because Petitioner had the opportunity to argue all of her Fourth Amendment claims before the Ohio courts, and there is no evidence that those courts conducted (or would have conducted) "sham proceedings" to resolve them, this Court cannot even consider the merits of those claims. Grounds Three and Four must be dismissed on that basis.

## IV. Grounds One and Six - Merits Review

Because Petitioner's second and fifth grounds for relief have been procedurally defaulted, and her third and fourth grounds for relief cannot be heard in a federal habeas corpus case, the only claims which the Court can evaluate on their merits are her first and sixth grounds for relief. Before turning to a specific consideration of those claims, the Court sets out the standard under which state court decisions are reviewed in a federal habeas corpus proceeding.

### A. Legal Standard

The provisions of the Antiterrorism and Effective Death Penalty Act, Pub.L. 104–132, 110 Stat. 1214 ("AEDPA") govern the scope of This Court's review. *See Penry v. Johnson*, 532 U.S. 782, 791 (2001); *Wilson v. Parker*, 515 F.3d 682, 691 (6th Cir.2008). AEDPA imposes a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and "demands that state-court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24,(2002) (*per curiam*).

When the claims presented in a habeas corpus petition have been presented to and decided by the state courts, a federal habeas court may not grant relief unless the state

court's decision was contrary to or an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts in light of the evidence that was presented. 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In applying this statute, the Supreme Court has held that "[t]he focus... is on whether the state court's application of clearly established federal law is objectively unreasonable... an unreasonable application is different from an incorrect one." To obtain habeas corpus relief, a petitioner must show the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Bobby v. Dixon*, 565 U.S. 23, 24 (2011) (*per curiam*), *quoting Harrington v. Richter*, 562 U.S. 86, 101-103 (2011). This bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. at 102 (*quoting Jackson v. Virginia*, 443 U.S. 307, 332, n. 50 (1979) (Stevens,

J., concurring in judgment)). In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id., quoting Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

In situations where the state courts have not adjudicated the merits of a claim, a federal habeas court should review a Petitioner's claim *de novo*. *Howard v. Bouchard*, 405 U.S. 459, 467 (6th Cir. 2005) ("Where the state court has not addressed or resolved claims based on federal law, most courts, including this one, have held that the decision is not an 'adjudication on the merits.' Thus, a federal habeas court reviews such unaddressed claims *de novo*."); *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003) (reviewing habeas Petitioner's sufficiency-of-the-evidence claim *de novo* where the state courts had considered the admissibility of the evidence but not the sufficiency of the evidence); *Pennington v. Jones*, 2006 WL 322474, at *2 (E.D. Mich. Feb.10, 2006) (reviewing habeas Petitioner's claim *de novo* where he raised it for the first time in her petition).

Questions of state law are not reviewable in a federal habeas action. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law. Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.") (citations and internal quotation marks omitted). Petitioner instead must show that "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *see also Estelle*, 502 U.S. at 68 ("In conducting habeas review, a federal

court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").  Accordingly, the Court of Appeals has held that "[e]rrors by a state court in the admission of evidence are not cognizable in habeas corpus proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994).

## B.  Ineffective Assistance of Counsel

Petitioner's first and sixth grounds for relief are both based on ineffective assistance of trial counsel and ineffective assistance of appellate counsel.  She claims that trial counsel:

- failed adequately to prepare for trial or discuss defense strategy with her;
- failed to object to prosecutorial references to her not testifying;
- failed to request DNA, serology and independent fingerprint analysis of the drugs and related evidence;
- failed to argue against using evidence obtained from the State's warrantless search of her vehicle;
- failed to object to the denial of the motion to suppress;
- stipulated to the reliability of the narcotics dog;
- failed to raise Chillicothe police procedures for traffic stops; and
- failed to make use of audio and video footage from police vehicle.

Petitioner also raises ineffective assistance of appellate counsel in this ground for relief, arguing that counsel was ineffective for

- failing to raise ineffective assistance of trial counsel
- failing to raise the trial court's error in not granting a mistrial based on prosecutorial misconduct; and
- failing to argue that the trial court erred by admitting evidence obtained during the police stop of Petitioner's vehicle.

These claims are evaluated under the following legal standard, in addition to the general principles applicable under the AEDPA.  It is important to note, however, that the AEDPA

has been held to "require that the federal court use a 'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." *See Burt v. Titlow*, 134 S.Ct. 10, 13 (2013).

The right to counsel guaranteed by the Sixth Amendment is the right to the effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). The standard for reviewing a claim of ineffective assistance of counsel is twofold:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). With respect to the first prong of the *Strickland* test, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689. For the second prong of the *Strickland* test, a petitioner must show that there is a reasonable probability that, but for counsel's errors, the result of the proceedings against her would have been different. *Id*. at 694. Both prongs of the *Strickland* test must be met, so if a court determines that a petitioner has failed to satisfy one prong, it is not required to consider the other. *Id* at 697.

The *Strickland* test applies to appellate counsel. *Burger v. Kemp*, 483 U.S. 776, 781–82 (1987). Counsel must provide reasonable professional judgment in presenting the appeal. *Evitts v. Lucey*, 469 U.S. 387, 396–97 (1985). " '[W]innowing out weaker arguments on appeal

and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983)). In determining whether appellate counsel performed in a constitutionally ineffective manner, the Court considers whether the omitted issues were "significant and obvious" and clearly stronger than those raised; whether they were objected to at trial; whether the trial court's rulings would be subject to a deferential standard of review; whether there existed arguably contrary authority on omitted issues; whether appellate counsel testified in a collateral proceeding as to justifiable grounds for his appellate strategy; appellate counsel's level of experience and expertise; whether the petitioner and appellate counsel reviewed potential issues for appeal, and whether counsel reviewed all of the facts; whether the omitted issues were dealt with in other assignments of error; and whether only an incompetent attorney would have omitted the issue on appeal. This list is not exhaustive, and merely includes factors to be considered by the court. *Mapes v. Coyle*, 171 F.3d 408, 427–28 (6th Cir.1999).

### 1. Trial Counsel

Petitioner argues that her trial counsel was ineffective because he did not adequately prepare for trial, discuss trial strategy with her, and failed to request independent analysis of the evidence seized from her by law enforcement officers during the traffic stop. She argued in her affidavit accompanying her Rule 26(B) motion that (1) "it was agreed to have the DNA and fingerprint analysis done on the drugs found in the pocket of the jacket she was wearing and the drugs found in the purse, along with the scales and other

paraphernalia"; (2) "that defendant paid counsel to have those services performed and [trial counsel] failed to do the same"; and (3) "neither the DNA or fingerprints could have been found on those items because she never handled them and they were placed there by the passenger in her car, and/or the detective searching her person." (Doc. 11, Ex. 12, ¶16).

The state appeals court evaluated this claim under the proper standard. *See Return*, Ex. 12. It rejected the first several portions of her claim (*i.e.* the allegations about failing to prepare for trial and not ordering tests) because the supporting affidavit she filed with her Rule 26(B) motion did not contain any facts to support those claims. It reasoned that the purpose of the affidavit requirement was to permit the appellate court to ascertain the facts behind an assertion of ineffective assistance of counsel, and that the absence of a factual record precluded it from doing so. It is difficult to view that decision as unreasonable. Certainly, there is no controlling federal law that mandates a state court to make factual determinations in the absence of an adequate record. Consequently, this Court cannot overturn the state appellate court's decision as to these claims.

Next, the state court addressed the claim that trial counsel should have made better arguments about the validity of the stop and search of her car. As the state court observed, however, counsel filed a motion to suppress and the trial court held a hearing. Further, Petitioner did not specify in her affidavit how he should have litigated the issue differently. Another portion of this claim related to counsel's alleged failure to bring up Chillicothe police procedures about traffic stops and dash cameras, but, as the state court noted,

counsel did raise this matter during the suppression hearing. Again, the state appellate court was justified in declining to grant relief on this claim.

The state court of appeals then considered the claim that trial counsel was ineffective for failing to object to the testimony about Petitioner's invocation of her *Miranda* rights. It agreed that counsel failed to preserve the issue for all but plain error review by not objecting, but the court said that Petitioner could not show prejudice because, as part of its plain error review, it determined that any error was harmless beyond a reasonable doubt due to the overwhelming evidence of Petitioner's guilt.

A state court's harmless error determination is itself subject to deference under the AEDPA. *See Davis v. Ayala*, 135 S.Ct. 2187 (2015). *Davis* held that when a state court has found harmless error, "relief is proper only if the federal court has 'grave doubt about whether a trial error of federal law had "substantial and injurious effect or influence in determining the jury's verdict.'" *Id.* at 2197-98, quoting *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995).

Applying that standard of review, this Court cannot say that the state court made an unreasonable determination as to whether trial counsel's failure to object was harmless error. Certainly, once the parties agreed that the totality of Petitioner's interaction with the investigating detective would come into evidence, any harm resulting from the initial testimony was substantially cured - and that is why, apparently, defense counsel wanted the jury to see the entire interaction. Further, there was a substantial amount of evidence of Petitioner's guilt, and her uncorroborated testimony that all of it was either planted by

the police or was property of the other occupant of the car was just that - uncorroborated. Counsel might have been more quick to object, but he did eventually bring the issue to the trial court's attention, obtained what he thought was an adequate cure, and was confronting a substantial amount of evidence of guilt. Under these circumstances, this Court simply cannot second-guess the state court's decision on the harmless error issue.

Lastly, the Fourth District Court of Appeals considered the assertions that trial counsel was ineffective for failing to challenge the qualifications of the drug dog and for having her testify. As to the former, the court rightly noted that Petitioner presented no evidence that a challenge to the dog's qualifications would have succeeded; without a factual basis to support her claim, Petitioner could not have expected it to be resolved in her favor. As to the decision to testify, the court noted that given the fact that drugs, cash, and drug paraphernalia were found in Petitioner's coat pocket and in her purse, if she had not testified, there would have been no evidence to rebut the inference that she knowingly possessed all those items. Further, this Court notes that Petitioner has not argued that she was prejudiced by taking the stand by, for example, having to reveal a criminal past that the jury would otherwise have been unaware of. Under these circumstances, the state court's conclusion that these matters constituted reasonable trial strategy and that Petitioner had not shown prejudice are entitled to deference as not being unreasonable applications of federal law. For all of these reasons, this Court cannot grant Petitioner any relief on her various assertions of ineffective assistance of trial counsel even if those claims had been properly preserved for federal habeas corpus review.

## 2. Appellate Counsel

Petitioner argues that appellate counsel was ineffective for failing to raise ineffective assistance of trial counsel on direct appeal. Petitioner also asserts that her appellate counsel was ineffective for not arguing on appeal that the trial court's decision to deny her motion to suppress was erroneous. Finally, Petitioner asserts that appellate counsel was ineffective for failing to argue that the trial court committed a reversible error in not granting a mistrial based on prosecutorial misconduct and by not arguing that the trial court erred by admitting evidence obtained during the police stop of Petitioner's vehicle.

As to the first of these claims, the state court of appeals concluded that because none of the claims of ineffective assistance of trial counsel had merit, appellate counsel could not have been ineffective for failing to raise them. Again, under *Strickland* and *Evitts*, the absence of prejudice is fatal to an ineffective assistance of counsel claim, so the state court of appeals applied the proper legal standard, and, under the AEDPA, its application of that standard cannot form the basis for federal habeas corpus relief unless that application was unreasonable. This Court has already concluded that the determination that none of Petitioner's claims of ineffective assistance of trial counsel had merit was not unreasonable. It follows that not faulting appellate counsel for his failure to raise those claims is also not an unreasonable act. Petitioner is therefore not entitled to relief on the first of her claims of ineffective assistance of appellate counsel.

As to the second part of this claim, the state court held that appellate counsel was not ineffective for deciding not to raise an issue about the trial court's denial of the motion

to suppress. It noted that the trial court held a hearing at which police officers testified that Petitioner committed two separate traffic offenses and that they had probable cause to stop her. It is always a difficult task to overturn factual determinations made by a trial court after taking evidence at a suppression hearing. Those findings are immune from reversal on appeal unless clearly erroneous, meaning that "a reviewing court is bound to accept the factual determinations of a trial court during a suppression hearing so long as they are supported by competent and credible evidence." *State v. Long*, 127 Ohio App.3d 328, 332 (Ross Co. App. 1996). Further, on the issue of pretext, the Supreme Court has held that a "pretextual stop" does not violate the Fourth Amendment when officers have a valid basis to stop a motorist even if their true motivation is to search for contraband. *Whren v. United States*, 517 U.S. 806, 812-813 (1996). The state court of appeals also reviewed, and rejected, the claim that the use of an unmarked vehicle for the traffic stop violated Ohio law and that the use of the drug dog violated the Fourth Amendment. This Court agrees with the state court that a reasonable appellate attorney could have concluded that there was no likelihood of reversal on the issue raised by the motion to suppress, so that court's determination that counsel was not ineffective for failing to raise that issue cannot be considered to be unreasonable.

As to the third and final alleged instance of ineffective assistance of appellate counsel, Petitioner makes a separate argument about the failure of appellate counsel to raise the issue about the trial court's failure to grant a mistrial. Counsel did, however, raise the claim that the introduction of the testimony about her invocation of *Miranda* violated

her constitutional rights, so the factual predicate of this claim - that counsel should have presented this issue to the state court of appeals - seems to be absent. Further, in light of that court's determination that any error surrounding the admission of that testimony was harmless (and this Court's conclusion that this determination was not unreasonable), there was no likelihood that had appellate counsel stressed the issue differently, he would have prevailed on appeal. The state court had the chance, through appellate counsel's efforts, to find error in the trial court's refusal to grant a mistrial, and it did not. Counsel was not ineffective with respect to that issue.

## V. Conclusion

For the foregoing reasons, it is **RECOMMENDED** that the petition for a writ of habeas corpus be **DENIED** and that this case be **DISMISSED**.

## VI. Procedure on Objections

If any party objects to ther Report and Recommendation, that party may, within fourteen days of the date of ther Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of ther Court shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of ther Court may accept, reject, or modify , in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit This matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981).

/s/ Terence P. Kemp
United States Magistrate Judge